UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 16-11120-GAO

FREDERICK T. GARDINER, JR.,
Plaintiff,

v.

M/V RAMZABAR and MICHAEL P. ARCIDI,
Defendants.

FINDINGS OF FACT AND CONCLUSIONS OF LAW
November 20, 2017

O'TOOLE, D.J.

This matter was tried to the Court sitting without a jury. Upon consideration of the evidence and the arguments of the parties, I make the following findings of fact and conclusions of law, pursuant to Rule 52 of the Federal Rules of Civil Procedure:

## I.    Findings of Fact

The M/V RAMZABAR ("the vessel") is a federally documented 1978 31-foot Bertram sport fishing boat, Official Number 662443. Frederick Gardiner purchased the vessel in 1996, and has remained the only federally registered owner of the vessel since that time. From the late 1990s until 2004, the vessel was regularly kept on a mooring in the water adjacent to the property of Mrs. Trudy Cutler, with her permission. Mrs. Cutler was Gardiner's former mother-in-law, with whom he seemed to share an amiable familial relationship. Brian Macourt, Gardiner's nephew, was given unlimited permission to use the vessel provided that he kept up its necessary maintenance. Macourt used the vessel regularly until 2004. Gardiner and Macourt also enjoyed an amiable familial relationship during this time.

Sometime in 2004, the vessel was removed from the water and stored on Mrs. Cutler's property. From 2004 until 2013, the vessel was stored either on the property of Mrs. Cutler or, at

times, on Macourt's property. I find that Macourt was a permissive user with whom Gardiner entrusted the vessel. The evidence did not support a finding that there was a business or contractual agreement between Gardiner and Macourt pursuant to which Gardiner agreed to pay either Mrs. Cutler or Macourt for storage or maintenance of the vessel. Specifically, I find that Mrs. Cutler allowed Gardiner to store the vessel on her property without expectation of compensation. I do not credit the assertion that Macourt expected to receive $35,000, or any other sum, from Gardiner in exchange for storage as alleged in the counterclaim. Additionally, there was no specific evidence of any particular goods, services, or necessaries advanced by Macourt for which he reasonably expected reimbursement from Gardiner.

At some point between 2010 and 2013, Macourt decided that he no longer wished to store the boat on either his or Mrs. Cutler's property. The evidence is unclear as to the extent this decision was communicated to Gardiner. Macourt decided to try to sell the boat.

On June 18, 2013, Sean Thibert paid Macourt $2,000 in exchange for whatever interest Macourt had in the vessel. Thibert specifically understood at the time of sale that Macourt did not hold title to the vessel and that it was legally owned by Gardiner. In July 2013, Thibert attempted without success to have the vessel deemed "abandoned" under state law so that he could obtain a valid title to it. To comply with state statutory procedure for obtaining title to an abandoned boat, he ran a required notice in the local newspaper.

At some point thereafter, Gardiner sought out Thibert in response to the newspaper ad and asserted his legal ownership of the vessel. During this meeting, Thibert showed Gardiner a copy of a letter from Macourt's attorney dated March 28, 2011, which purported to have been sent by certified mail to Gardiner making demand for $11,000 on behalf of Macourt for unspecified costs incurred in connection with the latter's purported storage of the vessel. This certified letter was

never signed for by Gardiner, and there is no evidence as to whether Gardiner actually received the letter or read its contents before the meeting with Thibert in 2013. However, I do find that at the time the letter was sent, Gardiner was aware that Macourt was seeking to have the vessel removed and was claiming to be owed some amount for costs related to its storage.

The evidence is unclear as to whether Gardiner attempted to remove the vessel from Thibert's property after the 2013 meeting. In any event, Gardiner did not in fact remove the vessel and it remained in Thibert's possession until 2016. At some point in 2016, Thibert listed the boat for sale on Craigslist.com. He specifically noted that there was an issue with respect to his not having title to the vessel.

On April 11, 2016, Michael Arcidi paid Thibert $3,000 for whatever interest Thibert had in the vessel. It is undisputed that Arcidi knew that Thibert was not the owner of legal title to the vessel. Arcidi registered the vessel in his home state of New Hampshire, where proof of title was not required.

In 2016, Arcidi was in possession of the vessel and preformed extensive repairs that greatly improved its condition. Arcidi admittedly did not rely on the credit of the vessel in preforming this work. The evidence did not indicate the value of any improvements made to the vessel by Arcidi.

On June 16, 2016, Arcidi was informed that his application to register the vessel with the Coast Guard and was denied because of Gardiner's conflicting affidavit of ownership.

## II.    Conclusions of Law

Gardiner initiated the present action, asking the Court to declare him the sole owner of the vessel and grant damages for conversion. Arcidi counterclaimed, asserting that he is entitled to possession of the vessel because he was granted ownership by Thibert. Additionally, he asserted

counterclaims for maritime liens accruing from the time the vessel was in Brian Macourt's custody, unjust enrichment, and breach of contract.

A. Ownership

Gardiner has always been the only party holding title to the vessel. He requests that the Court declare him the sole owner of the vessel.

I conclude on the evidence that Gardiner did not surrender ownership of the vessel by abandonment by storing in on Mrs. Cutler's or Brian Macourt's property. In particular, the vessel was not abandoned within the meaning of relevant state statutory law. See M.G.L. ch. 91 §§ 38, 39. Moreover, no person was granted title to the vessel pursuant to an arguably available statutory remedy. Id. § 42. Arcidi did not seek that remedy. Thibert tried to pursue the statutory route to obtain title to an abandoned vessel, but was denied title on the ground that the vessel was not in fact abandoned. Finally, Thibert knew he did not have good title, a fact that Arcidi was aware of when he purchased whatever interest Thibert did have in it.

Consequently, I conclude that Gardiner remains the sole legal owner of the vessel.

B. Conversion

Because Gardiner is the legal owner of the vessel, his claim for conversion has merit. However, the usual remedy for that tort would be an award of money damages for the fair value of the converted property at the time of the conversion. Flaherty v. Knapik, 999 F. Supp. 2d 323, 341 (D. Mass. 2014) (citation omitted). There was evidence that the vessel was in seriously deteriorated condition when it passed from Macourt to Thibert to Arcidi, but no sound evidence exists to put a dollar value on its worth.

As an alternate remedy, it seems appropriate to require Arcidi to return the boat to Gardiner's possession, conditioned on Gardiner's reimbursement to Arcidi of the fair value of the

labor and materials he contributed to the restoration of the vessel. Otherwise, return of the restored vessel would give Gardiner an undeserved windfall, and would amount to an unjust enrichment.

C.  Maritime Liens

There are no relevant maritime liens shown in this case. Macourt is not a party to this action, and although he testified about, and apparently once attempted to collect, costs he had allegedly incurred, there is no claim by him presented here. Thibert, also a non-party, similarly is not claiming any right to recover by reason of a maritime lien. Although Arcidi purchased Thibert's interest in the vessel, including any maritime liens, there evidence is not sufficient to establish the existence of any such liens. Finally, the amounts spent by Arcidi were spent by one who considered himself an owner, and thus were not expended by a "stranger[] to the vessel." See Mullane v. Chambers, 438 F.3d 132, 137 (1st Cir. 2006) (citation omitted); Medina v. Marvirazon Compania Naviera, S.A., 709 F.2d 124, 125 (1st Cir. 1983).

D.  Judgment

Accordingly, it is adjudged that Gardiner is the rightful owner of the vessel. Arcidi is ordered to return the vessel to Gardiner's possession, conditioned on the payment by Gardiner to Arcidi of the fair value of the labor and materials contributed by Arcidi to the restoration of the vessel. The parties are encouraged to negotiate an agreed value. In the event of an inability to agree, the Court can determine the fair value after an evidentiary hearing.

It is SO ORDERED.

/s/ George A. O'Toole, Jr.
United States District Judge